NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEAN ABELARD and GUERDA ABELARD as Administrators ad Prosequendum for the Estate of MARVIN ABELARD, | |
| Plaintiffs, | Civil Action No. 16-5276 (KM) |
| v. | OPINION |
| CLEAN EARTH INC., SANDVIK, INC., and ABC CORPS. 1-10., | |
| Defendants. | |

### I. INTRODUCTION

This matter comes before the Court on Plaintiffs' cross-motion for leave to file an Amended Complaint. See Pl.'s Cross-Mot. to Amend, D.E. 18. Plaintiffs, Jean and Guerda Abelard, as administrators ad prosequendum for the Estate of Marvin Abelard, seek to amend their Complaint to add a claim of intentional wrongdoing against Defendant Clean Earth, Inc. ("Clean Earth"), the former employer of decedent Marven Abelard ("Marven"). See Am. Compl. ¶19-24, Exh. to Pls.' Cross-Mot. to Amend, D.E. 18-3. Defendant Clean Earth opposes the motion, arguing that the Proposed Amended Complaint lacks sufficient facts to support Plaintiffs' claim of intentional wrongdoing and only asserts legal conclusions. Def.'s Reply, D.E. 20. Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decided this motion without oral argument. For the reasons set forth below, the Court will grant Plaintiff's motion.

## II.     BACKGROUND

In 2015, Marven was hired by Defendant Intelligent Resources Group ("Intelligent Resources"), a temporary employment agency. Prop. Am. Compl. ¶4.[1] Marven was assigned by Intelligent Resources to work at Clean Earth's facility in Carteret, New Jersey. Id. Clean Earth is "one of the largest processors of contaminated soils, dredged sediments, drill cuttings, industrial non-hazardous waste, aerosol cans, consumer commodities, and hazardous wastes." Id. at ¶1. Marven, whom Plaintiffs describe as a "low-skill laborer," started work at Clean Earth as a "picker," responsible for sorting and separating waste by hand. Certification of Reynauld Bien-Aime ¶5-8, D.E. 18-4. At some point in March 2016, Marven was directed to begin working in close proximity to the Sandvik QE440 machine, a "scalping screener with a conveyer belt." Id. at ¶6, 9. The manufacturer of the machine, Sandvik, Inc. is also named as a Defendant in this case. Prop. Am. Compl. ¶2. Marven's main task was "to use a metal scraper on a wooden handle to knock debris off a component of the [Sandvik] QE440 while the machine was in use and operating." Bien-Aime Cert. ¶9. Marven was also tasked with "cleaning the rollers of the conveyer belt." Id. at ¶10. Plaintiffs allege that Marven lacked the proper training to use this machine. Prop. Am. Compl. ¶22. On May 2, 2016, Marven was directed by Clean Earth to work alone with the Sandvik machine. Id. At some point that day, Marven became entangled in the Sankvik QE440 and "sucked into the machine and subsequently asphyxiated to death." Id. at ¶4.

On July 25, 2016, Plaintiffs filed a wrongful death action in the Superior Court of New Jersey seeking compensatory damages. Compl., Exh. A. to Not. of Removal, D.E. 1-1.

---

[1] For the purposes of the motion to amend, the Court must accept as true all well pleaded allegations in the proposed amended complaint. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

2

Defendants removed the action to this Court on August 30, 2016, on the basis of diversity jurisdiction. Not. of Removal, D.E. 1. Defendant Clean Earth then moved the dismiss the original Complaint, arguing that because Plaintiffs timely collected benefits under Intelligent Resources' workers' compensation insurance, any claim against Clean Earth was therefore barred under the New Jersey Workers' Compensation Act, N.J.S.A. 34:15-8. Def.'s Opp'n, D.E. 10. Plaintiffs have opposed the motion, arguing that Marven was actually an employee of Intelligent Resources, not Clean Earth; therefore, Clean Earth is not protected by the Workers' Compensation Act and Plaintiffs are entitled to pursue a wrongful death claim against Clean Earth. Pl.'s Cross-Mot. at 15-31, D.E. 18-1. Furthermore, Plaintiffs cross-moved to amend their Complaint to include a claim of intentional wrongdoing. Id. at 32 to 39. As Plaintiffs explain, even if Clean Earth is deemed to have been Marven's employer, a claim of intentional wrongdoing is considered an exception to the workers' compensation bar, and their wrongful death claim should be permitted to proceed. Id.

### III.   DISCUSSION

Under Fed. R. Civ. P. 15, a plaintiff may amend his complaint once as of right, and "courts may grant subsequent amendments 'when justice so requires.'" Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). The Court may deny leave to amend the pleadings only where there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Long v. Wilson, 393 F.3d 390, 400 (3d Cir.2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations omitted); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d

Cir.2002). Here, Clean Earth asserts that the Court should deny Plaintiffs' motion for leave to file an Amended Complaint because of the futility of Plaintiffs' proposed amendment adding a claim of intentional wrongdoing. Def.'s Reply Br. at 13-18, D.E. 20. Because Clean Earth does not argue that there is undue delay, bad faith, undue prejudice, or repeated failure to cure deficiencies, the Court will base its determination on whether to grant Plaintiffs' motion to amend solely on whether it would be "futile" to allow their proposed new claim to proceed. See Assadourian v. Harb, 2008 WL 4056361, at *3 (D.N.J. 2008) ("The futility of amendment, or the failure of the plaintiff to articulate a claim, may also serve as a basis for denying a motion to amend.").

A court will consider an amendment futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted) (internal quotations marks omitted). To determine whether an amendment is insufficient on its face, the Court employs the standard applied to Rule 12(b)(6) motions to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (establishing that a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); Harrison Beverage, 133 F.R.D. at 468 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue."). A two-part analysis determines whether this standard is met. Fowler, 578 F.3d at 210 (citing Ashcroft v. Iqbal, 556 U.S. 662, 629, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

First, a court separates the factual and legal elements of a claim. Fowler, 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions. Id. at 210–11; West Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 n. 6 (3rd Cir.2010); see also Iqbal, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotations marks omitted).

Second, as stated above, a court determines whether the plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. As the Supreme Court instructed in Iqbal, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. The plausibility standard is not a "probability requirement," but the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct." Id. at 678–79 (citations omitted) (internal quotation marks omitted). This "context-specific task ... requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

In New Jersey the worker's compensation system has been characterized an a "trade-off whereby employees relinquish their right to pursue common law remedies in exchange fro automatic entitlement to certain, but reduced, benefits whenever they suffered injuries by accident arising out of and in the course of employment. " Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 174 (1985). However, there are a certain number of exceptions to this so-called "trade-off." The New Jersey Workers' Compensation Act provides that "[i]f an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise

on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong." N.J.S.A. 34:15-8 (emphasis added); see also Laidlow v. Hariton Mach. Co., Inc., 170 N.J. 602, 605 (2002) ("[A]n employer who causes the death or injury of an employee by committing an 'intentional wrong' will not be insulated from common-law suit.").  Therefore, if this Court finds that Clean Earth committed an "intentional wrong" which caused Marven's death, then Plaintiff's will be permitted to proceed with their wrongful death common-law suit.

New Jersey courts have developed a two prong test to determine whether an employer committed an "intentional wrong."  In order to satisfy the first prong of the test, the so-called "conduct" prong, a plaintiff must establish that the employer knew that the actions which caused the accident were "substantially certain to result in injury or death to the employee." Id. at 617.  In order to satisfy the second prong of the test, the so-called "context" prong, a plaintiff must show that "the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize."  Id.

In regards to the "conduct" prong of the test, Plaintiffs must demonstrate that Clean Earth knew that directing Marven to work alone, without proper training, and in close proximity to the Sandvik QE440 machine was "substantially certain to result in injury or death to the employee." Laidlow, 170 N.J. at 617.  New Jersey courts have sought to define the conduct prong in a number of different cases.  For example, in Millison, 101 N.J. at 174, the New Jersey Supreme Court determined that although "defendants' conduct in knowingly exposing plaintiffs to asbestos clearly amount[ed] to deliberately taking risks with employees' health…the mere knowledge and appreciation of a risk — even the strong probability of a risk — [comes] up short of the 'substantial

6

certainty' needed to find an intentional wrong resulting in avoidance of the exclusive-remedy bar of the compensation statute."  By contrast, in <u>Laidlow</u>, 170 N.J. at 620-21, the New Jersey Supreme Court, upon consideration of persuasive evidence that defendant company kept a safety guard inactive at all times and that plaintiff and another employee had previously experienced "close calls" with the same machine which ultimately caused plaintiff's severe hand injury, found "that [defendant] knew not only that injury was substantially certain to occur, but also that when it did occur it would be very serious." Thus, the "conduct" prong was deemed satisfied in <u>Laidlow</u>. <u>Id.</u>  Similarly, in <u>Mull v. Zeta Consumer Prods.</u>, 176 N.J. 385, 387-92 (2003), the New Jersey Supreme Court found that the conduct prong was satisfied because plaintiff, whose hand was injured while using an industrial machine, presented evidence that defendant company had disabled the machine's safety device and had also been cited by OSHA for failing to properly train employees for use of the machine.  The Court in <u>Mull</u> was influenced by the plaintiff's submission of an export report which concluded that the "hazardous operating conditions created a virtual certainty of injury to the machine's operators." <u>Id.</u> at 389 (internal quotation marks omitted).

In order to satisfy the "context" prong of the test, Plaintiffs must demonstrate that "the resulting injury and the circumstances of its infliction on the worker [were] (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize." <u>Laidlow</u>, 170 N.J. at 617.  As this Court concluded in <u>Blackshear v. Syngenta Crop Prot., Inc.</u>, 2011 U.S. Dist. LEXIS 125505 (D.N.J. 2011), "[a] review of the New Jersey Supreme Court's application of this prong reveals that it operates as an inquiry into whether the injury occurred as a result of ordinary foreseeable work hazards in the plaintiff's field or as a result of some abnormally unsafe employer practice."  For example, in both <u>Laidlow</u>, 170 N.J. at 622, and <u>Mull</u>, 176 N.J. at 393, the New Jersey Supreme Court determined that an

7

employer's act of removing a safety device on a dangerous industrial machine, in combination with other unsafe practices, was plainly beyond what the Legislature, in enacting the Worker's Compensation Act, would have considered to "constitute simple facts of industrial life."

In this case, the Proposed Amended Complaint alleges that "during the time that Plaintiff worked at Clean Earth, he was instructed by Clean Earth's safety officer to keep a distance of several hundred feet away from the Sandvik QE440 machine…[and] also advised to stay away from the Sandvik QE440 when it was in use." Prop. Am. Compl. ¶21. Furthermore, the Proposed Amended Complaint alleges that "the Sandvik QE440 Operator's Manual provides that a worker must be properly trained and that there in a risk of 'death or serious injury' with the machine." Id. The warnings in the Sanvik QE440's Operating Manual included the following: "all work involving the equipment MUST ONLY be performed by trained, competent, reliable and authorized persons only;" "NEVER work alone;" and "PERONSAL HAZARD! Working in close proximity to running machine could cause serious injury or death." Id.  Significantly, the Proposed Amended Complaint goes on to allege that "in direct contravention of these warnings" Clean Earth directed Marven, who was a "low skilled laborer" and "not properly trained," to work alone, and in close proximity, to the Sanvik QE440 "while it was in use and operating." Id ¶21-24.  Plaintiffs allege that all of these factors combined create the reasonable inference that "Clean Earth knew with substantial certainty that [Marven] would be injured if he continued to work in this dangerous environment." Id. ¶23.

Based on the facts alleged in the Proposed Amended Complaint, the Court concludes that Plaintiffs' proposed claim for intentional wrongdoing sets forth "enough facts to state a claim to relief that is plausible on its face." See Bell Atl. Corp, 550 U.S. at 570.  Similar to the circumstances of Laidlow and Mull, in which defendant companies removed safety devices on dangerous

8

industrial machines and were found to have committed intentional wrongs, Plaintiffs here allege that Clean Earth greatly deviated from accepted safety practices by directing Marven, a low skilled laborer, to work alone, and in close proximity, to a dangerous industrial machine for which he had no proper training.   The totality of the circumstances alleged in the Proposed Amended Complaint satisfies the "conduct" prong of the intentional wrong test, because the facts alleged make plausible the inference that Clean Earth knew its actions were "substantially certain to result in injury or death to the employee."   See Laidlow, 170 N.J. at 617.  The "context" prong of the test is also satisfied because Plaintiffs allege that Clean Earth's conduct in regards to the Sandvik QE440 machine was in direct contravention of proper safety protocol, thus making plausible the inference that Clean Earth's conduct was plainly outside what the Legislature would have considered "simple facts of industrial life."  Id. at 622.  Therefore, Plaintiffs' cross motion to amend its complaint [D.E. 18] to add a claim of intentional wrongdoing against Clean Earth is granted.

*s/ Michael A. Hammer*
**United States Magistrate Judge**

Dated:  February 14, 2017