NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JEAN ABELARD, et al., | : | |
| | : | Civil Action No. 16-5276 (KM) (MAH) |
| Plaintiffs, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| CLEAN EARTH, INC., et al., | : | |
| | : | |
| Defendants. | : | |

## I. INTRODUCTION

This matter comes before the Court on the Plaintiffs' motion for leave to file a Third Amended Complaint to include three additional defendants and additional factual allegations. Plaintiffs also move to remand this action to the state court for lack of diversity jurisdiction. Defendant Clean Earth opposes the motion. The Court has considered the motion papers and issues this decision without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will grant in part and deny in part Plaintiffs' motion for leave to amend.

## II. BACKGROUND

This cases arises out of the death of Marvin Abelard ("Abelard") while he was working for Defendant Clean Earth, Inc. ("Clean Earth") at its Carteret, New Jersey facility. Second Amended Complaint, D.E. 41, at ¶ 6. According to the Second Amended Complaint, Clean Earth is "one of the largest processors of contaminated soils, dredged sediments, drill cuttings, industrial non-hazardous wastes, aerosol cans, consumer commodities and hazardous wastes."

*Id.* at ¶ 1. Plaintiffs, Jean Abelard and Guerda Abelard, as administrators ad prosequendum for the Estate of Marvin Abelard, allege that at the time of his death, Abelard was employed by Reavan, Inc. d/b/a Intelligent Resource Group ("IRG"), a temporary employment agency that placed Abelard at Clean Earth. *Id.* at ¶ 6.

Plaintiffs allege that while Abelard was working at Clean Earth in 2016, Clean Earth instructed him to work on a Sandvik QE440 ("QE440") machine. *Id.* at ¶ 24. Abelard was told to "use a metal scraper on a wooden handle to knock debris off a component of the QE440 while it was in use and operating." *Id.* Abelard was also responsible for cleaning the rollers of the conveyor belt. *Id.* Plaintiffs allege that Abelard lacked the proper training to use this machine. *Id.* Further, Plaintiffs allege that cleaning the machine in this manner was in "direct contravention" of the warnings in the QE440 Manual and instructions of Clean Earth's safety officer. *Id.* at ¶¶ 23-24. Plaintiffs allege that on May 2, 2015, while working on a QE440, Abelard was sucked into the machine and subsequently asphyxiated. *Id.*

Plaintiffs filed a wrongful death action on July 25, 2016 in the Superior Court of New Jersey Law Division. *See* Complaint, Ex. A, to Notice of Removal, D.E. 1-1. Defendants removed the action to this Court on August 20, 2016 on the basis of diversity jurisdiction. *See* Notice of Removal, D.E. 1. Plaintiffs filed their First Amended Complaint on February 24, 2017, *see* First Amended Complaint, D.E. 25, and the Second Amended Complaint on May 22, 2017. *See* Second Amended Complaint, D.E. 41.

Plaintiffs now seek leave to file a Third Amended Complaint to include additional factual allegations in support of their intentional wrong claim against Clean Earth. Specifically, Plaintiffs seek to add "specific allegations relating to (1) jurisdiction and venue; (2) OSHA citations against defendant Clean Earth, Inc.; and (3) warnings present in the Sandvik QE440

manual. . ." Movant's Br., D.E. 60-1, at 7.[1] Plaintiffs also seek to add IRG, Abelard's alleged employer, as a defendant, as well as Eastern Processing Equipment, Inc. d/b/a Promac Group ("Eastern Processing") and Screen Service Technology, Inc. d/b/a/ Advanced Equipment Solution ("Screen Service"), alleged distributors of the subject QE440 machine. *See generally,* Movant's Br., D.E. 60-1.

### III. ANALYSIS

#### a. STANDARD ON MOTION TO AMEND

The threshold issue in resolving a motion for leave to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure. *Karlo v. Pittsburgh Glass Works, LLC*, No. 10-1283, 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo*, 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)). In this case, the Court issued a Scheduling Order on March 2, 2017, [D.E. 29], which gave parties until September 8, 2017 to add new

---

[1] The Court will grant Plaintiffs' motion for leave to amend insofar as he seeks to add the allegations pertaining to jurisdiction and venue and the warnings related to the QE440, specifically paragraphs 13 and 32 of the proposed Third Amended Complaint.

Plaintiff also seeks to add an allegation regarding an April 2010 citation that OSHA issued to Clean Earth regarding an accident at another Clean Earth facility. *See* Proposed Third Amended Complaint, D.E. 60-3 at ¶ 14. The 2010 OSHA citation pertains to a different incident involving a different employee and different equipment at a different Clean Earth facility. Further, it occurred approximately six years earlier. Accordingly, the 2010 OSHA citation is wholly irrelevant to this matter. Plaintiffs' motion for leave to amend is denied as to ¶14 of the proposed Third Amended Complaint.

parties or amend pleadings. Plaintiffs timely filed this motion for leave to amend on August 25, 2017. Therefore, Rule 15 governs the instant motion.

Under Rule 15, a party may amend the complaint once as of right, and "courts may grant subsequent amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 116 (3d Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). The Court may deny leave to amend the pleadings only where there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations omitted); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

A court will consider an amendment futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted) (internal quotations marks omitted). To determine whether an amendment is insufficient on its face, the Court employs the standard applied to Rule 12(b)(6) motions to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (establishing that a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); *Harrison Beverage*, 133 F.R.D. at 468 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue."). A two-part analysis determines whether this

standard is met. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 629 (2009)).

First, a court separates the factual and legal elements of a claim. *Fowler*, 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions. *Id.* at 210–11; *West Penn Allegheny Health Sys., Inc. v. UPMC,* 627 F.3d 85, 97 n.6 (3d Cir. 2010); *see also Iqbal*, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotations marks omitted).

Second, as stated above, a court determines whether the plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. As the Supreme Court instructed in *Iqbal,* "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. The plausibility standard is not a "probability requirement," but the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct." *Id*. at 678–79 (citations omitted) (internal quotation marks omitted). This "context-specific task ... requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### b. PLAINTIFFS' MOTION TO ADD IRG AND THE INTENTIONAL WRONG EXCEPTION TO THE NEW JERSEY WORKERS COMPENSATION ACT

The first issue is whether the proposed Third Amended Complaint sufficiently pleads a cause of action against IRG for intentional wrong. Plaintiffs' Proposed Third Amended

Complaint alleges actions by IRG that Plaintiffs argue may make IRG liable under the "intentional wrong" exception to the worker's compensation prohibition on tort claims against an employer. *See* Movant's Br., D.E. 60-1, at 5; *see also* Proposed Third Amended Complaint, D.E. 60-3. Clean Earth, however, argues that Plaintiffs' proposed claim for intentional wrong against IRG is futile because Plaintiffs have not plead facts sufficient to make a viable claim against IRG. Opp'n Br., D.E. 66, at 5. They further contend that Plaintiffs unduly delayed amending their pleading to add these new defendants and new factual allegations. *Id.* Finally, Clean Earth argues that joinder of IRG is improper here because Plaintiffs are adding them only to destroy diversity.

The pertinent allegations in the proposed pleading, *see* D.E. 60-3, against IRG may be summarized as follows:

1. IRG was a temporary employment agency based in New Jersey that employed Marvin Abelard. ¶ 10.

2. On November 2, 2016, OSHA cited IRG regarding Clean Earth's Carteret website for "failing to 'complete a written certification that identified the workplace evaluated, the person certifying and date that workplace hazard assessment was completed.'" ¶ 15.

3. Clean Earth, and/or IRG, and/or some other entity, was responsible for training and/or warning Marvin Abelard about the QE440, and were negligent in doing so. ¶ 23.

4. The negligent training and/or warning of Marvin Abelard regarding the QE440 caused his injury and resulting death. ¶ 24.

5. IRG knew Marvin Abelard lacked the required training and experience to work "at a large-scale industrial waste facility" but IRG failed to train him and assigned him to the Clean Earth worksite knowing he would work with equipment such as the QE440. ¶ 31.

6. Clean Earth's safety officer advised Marvin Abelard to maintain "a distance of several hundred feet away" from the QE440. ¶ 32.

7. Clean Earth and/or IRG directed Marvin Abelard to work with the QE440 alone and was specifically instructed to "use a metal scraper on a wooden handle to knock

>
> debris off a component of the QE440 while it was in use and operating. . ." and was responsible for "cleaning the rollers of the conveyor belt. ¶ 33.

8. Clean Earth and/or IRG "knew with substantial certainty that [Marvin Abelard] would be injured if he continued to work under these conditions[]" but was nonetheless required by Clean Earth and/or IRG to continue to work in this dangerous environment. ¶ 35.

9. As a result of Clean Earth and/or IRG's actions, Marvin Abelard suffered severe injuries which led to his death. ¶ 36.

This Court previously discussed the standards for an intentional wrong claim in its Opinion granting Plaintiffs' motion to add such a claim against Clean Earth. *See* Opinion and Order, Feb. 14, 2017, D.E. 23-24. The New Jersey Workers Compensation Act excepts intentional wrong by the employer from the workers compensation bar. N.J.S.A. 34:15-8. *See also Millison v. E.I. du Pont de Nemours & Co.*, 101 N.J. 161, 169, 178 (1985) (adopting "substantial certainty" standard for intentional wrong claim). The New Jersey Supreme Court has instructed a plaintiff can establish intentional wrong if he or she can satisfy two prongs: (1) the "conduct" prong, and (2) the "context" prong. *Id.* at 178-79; *Laidlow v. Hariton Mach. Co., Inc.*, 170 N.J. 602, 617 (2002). The conduct prong requires the plaintiff to establish that the employer engaged in conduct that it knew was "substantially certain" to result in the employee's death or injury. *Laidlow*, 170 N.J. at 613 (citing W. Prosser & W. Keeton, The Law of Torts § 80, at 569 (5th ed. 1984)). The context prong requires the plaintiff to show that the "resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended that Worker's Compensation Act to immunize." *Id.* at 605. To prevail on an intentional wrong claim, a plaintiff must satisfy both prongs of the *Millison* test. *Id.* at 615.

In this case, Clean Earth argues that Plaintiffs proposed pleading does not "connect these alleged actions to the accident (causally or otherwise)," or allege that IRG's actions were done "with knowledge to a substantial certainty that they would result in Mr. Abelard's death." Opp'n Br., D.E. 66, at 17. *Id.* Plaintiffs, on the other hand, argue that IRG may be jointly and severally liable to the plaintiffs by virtue of a Master Service Agreement between IRG and Clean Earth regarding the employment of Abelard. *See* Master Service Agreement, D.E. 60-2.

The question of substantial certainty does not turn on one single fact but rather on the totality of the circumstances. The New Jersey Supreme Court adopted this standard in *Millison*, stating "the mere knowledge and appreciation of a risk—even the strong probability of a risk—will come up short of the 'substantial certainty' needed to find an intentional wrong . . . ." 101 N.J. at 179. In *Millison¸* employees who were exposed to asbestos sued their employers, alleging first that their employers deliberately concealed the risk of exposure to asbestos in the workplace, and second that their employers aggravated their initial occupational diseases by fraudulently concealing medical information obtained during physical exams showing that some employees already contracted diseases. *Id.* at 165. The Court held that the employees had not sufficiently shown that their employers' awareness and failure to notify employees of the asbestos was an intentional wrong because occupational diseases were a fact of industrial employment clearly anticipated by the legislature as compensable under the Worker's Compensation Act. However, the Court did find that plaintiffs plead a valid cause of action for their employers' failure to notify employees who had already contracted diseases. That court noted: "[A]n employer's fraudulent concealment of disease already developed is not one of the risks an employee should have to assume." *Id.* at 182. The Court focused on the difference

between tolerating workplace conditions that may result in injuries or illnesses, and "actively misleading employees who have already fallen victim to those risks of the workplace." *Id*.

The New Jersey Supreme Court further clarified "substantial certainty" in *Laidlow,* highlighting that the question substantial certainty requires a case-by-case analysis. 107 N.J. at 619. The plaintiff in *Laidlow* was injured when his hand was crushed by a machine that routinely had its safety guard removed while in use. The court pointed to "the prior close-calls, the seriousness of any potential injury that could occur, [plaintiff's] complaints about the absent guard, and the guilty knowledge of [the employer]" which replaced the safety device only when OSHA inspectors came, as factors to consider when determining substantial certainty. *Id*. at 622.

In *Tomeo v. Thomas Whitesell Construction Co.*, 176 N.J. 366 (2003), the court held that the plaintiff did not show sufficient evidence that his employer knew with substantial certainty of the risk after plaintiff was injured using a snow blower whose safety level had been taped down to remain constantly on. Plaintiff injured his hand while pushing snow through the cute when the blower became clogged. The court focused on the fact that the plaintiff was using a consumer product, not industrial equipment. Further, the snow blower had various warning labels about the type of injury plaintiff sustained. *Id*. at 375-76. By contrast, in *Mull v. Zeta Consumer Prods.*, 176 N.J. 385 (2003), the plaintiff injured her hand while fixing a machine that suddenly turned on, pulling her hand into it. The court looked at previous OSHA safety violations, removal of safety devices from the machine, a different employee's previous injury working on the same machine, and the employer's awareness of repeated complaints from employees about safety concerns. *Id* at 392. The court found that the legislature would not have considered these factors, taken in totality, to be "simple facts of industrial life." *Id*. at 393.

The New Jersey Supreme Court most recently revisited the issue of substantial certainty in *Van Dunk v. Rackson Associates Realty Corp.,* 210 N.J. 449 (2012), in which the plaintiff was injured after a trench collapsed at a construction site workplace. The plaintiff initially volunteered to walk into a trench to straighten filter fabric. Plaintiff's supervisor at first instructed him not to do so, because of the possible risks of a trench collapse. But after the filter fabric became further tangled, plaintiff was instructed to go in and straighten it out. The court concluded that although the employer's change in instructions amounted to poor judgment, they did not satisfy the substantial certainty standard. The court also concluded that the employer could not have known with substantial certainty that a cave-in "almost certainly would occur during the brief time plaintiff was sent into the trench." *Id*. at 472.

Having considered the allegations plead against IRG, the Court must conclude that Plaintiffs have not plead facts sufficient to meet the conduct prong in this case. The allegations, taken as true, do not show that IRG knew with substantial certainty of the risk of death using the QE440. The proposed pleadings do not allege that Plaintiff or any other employee had a prior close calls using the QE440 at that facility such as in *Laidlow*. And while there is an allegation of safety-device removal, Plaintiffs do not allege that IRG was involved or had knowledge of it. There has been no allegation of any past serious OSHA safety violations by IRG, only one regarding failing to complete a written certification. *See* Proposed Third Amended Complaint, D.E. 60-3, at ¶ 15.

The Master Service Agreement between Clean Earth and IRG does not assist Plaintiffs. *See* Master Service Agreement, Ex. A to Plaintiffs' Motion to Amend, D.E. 60-2. The Master Service Agreement provides that it is Clean Earth's obligation to "[p]roperly supervise and train. . . Assigned Employees performing its work and be responsible for its business operations,

products, services, and intellectual property." *Id.* at 4. Further, the Master Service Agreement provides that Clean Earth must "[p]roperly supervise, control, and safeguard its premises, processes or systems. . ." *Id.* It was IRG's responsibility as the staffing service, to "[r]ecruit, screen, interview, hire, and assign its employees to perform the type of work described" in the agreement. *Id.* But as to Marvin Abelard, the agreement merely categorized the work as "general labor." *Id.* at 12.

It is also true that the Master Service Agreement imposed on IRG the obligation to "confirm that [Clean Earth] has provided site-specific safety and health training . . . and personal protective equipment." Id. at 4. The proposed Amended Complaint is silent, however, as to any allegation regarding failure to provide protective equipment. And even if IRG failed to confirm that Clean Earth provided training, that does not come close to rising to the level of substantial certainty that *Millison, Laidlow*, and their progeny require. To be clear, "substantial certainty" requires significantly more than the mere possibility of injury or death. It requires that the employer know that its dereliction makes it nearly certain that the employee will be injured. That is precisely the distinction that the *Millison* court drew between the substantial certainty requirement, versus mere negligence or recklessness. *See Millison*, 101 N.J. at 178 ("In light of the legislative inclusion of occupational diseases within the coverage of the Compensation Act, however, the dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other must be drawn with caution, so that the statutory framework of the Act is not circumvented simply because a known risk later blossoms into reality. We must demand a virtual certainty."). Given the high standard for substantial certainty, Plaintiffs have not shown any factors sufficient to show that IRG was substantially certain sending Marvin Abelard to work at Clean Earth as a general laborer would result in serious injury or death beyond what is

contemplated by the Worker's Compensation Act. Plaintiffs, therefore, have not plead facts sufficient to meet the first prong for intentional wrong and thus cannot show a plausible claim against IRG under the intentional wrong exception.[2]

### c. PLAINTIFFS' MOTION TO ADD EASTERN PROCESSING AND SCREEN SERVICE AND UNDUE DELAY

Plaintiffs also seek to add Eastern Processing and Screen Service to their product-liability claims as sellers/distributors of the QE440. Clean Earth objects, arguing that Plaintiffs unreasonably delayed adding these defendants and new factual allegations. While incidental prejudice and incidental delay are insufficient grounds on which to deny leave to amend, undue prejudice or undue delay support denial. *Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990). As the Court of Appeals for the Third Circuit has explained,

> [t]he passage of time, without more, does not require that a motion to amend a [pleading] be denied; however, at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party. The question of undue delay, as well as the question of bad faith, requires that we focus on the [movant's] motives for not amending their [pleading] to assert this claim earlier; the issue of prejudice requires that we focus on the effect on the [adverse party].

*Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) (internal citations omitted); *see also Cureton v. NCAA,* 252 F.3d 267, 273 (3d Cir. 2001) (stating that "the question of undue delay requires that we focus on the movant's reasons for not amending sooner" and that the issue of prejudice focuses on hardship to the nonmovant if the amendment is permitted); *Harrison,* 13

---

[2] Plaintiffs also argue that they should be allowed to add IRG as a defendant in order to facilitate discovery. *See* Plaintiffs' Brief in Support of Motion To Amend, D.E. 60-1, at 2, 11. Plaintiffs contend that IRG may possess post-accident investigation reports and safety assessments pivotal to their case. *Id.* at 11. That Plaintiffs may need discovery from IRG is not a valid consideration under Rule 15. Moreover, Plaintiff can obtain these and any other relevant discovery from IRG by way of a subpoena pursuant to Federal Rule of Civil Procedure 45.

F.R.D. at 468 (stating that, in cases of delay, the movant must show that "its delay in seeking to amend is 'satisfactorily explained'" (quoting *Leased Optical Dep'ts v. Opti-Ctr., Inc.,* 120 F.R.D. 476, 478 (D.N.J. 1988)). In the case of undue delay, the court must look at the movant's motives for not amending their pleading earlier. *Adams,* 739 F. 2d 858, 868 (3d Cir. 1984).

Clean Earth argues that Plaintiffs now seek to add defendants and facts that have been known to the Plaintiffs "since the filing of this action," amendments which come "a full year" after this action was removed from state court. Opp'n Br., D.E. 66 at 5. Most pertinent here is that Plaintiffs timely filed this motion for leave to amend. A previous motion for leave to file a Third Amended Complaint, D.E. 50, was filed by Plaintiffs on June 23, 2017. This motion was terminated pursuant to a Court Order, D.E. 57, which directed Plaintiffs to file a new motion for leave to amend on or before August 25, 2017. Plaintiffs timely filed the instant motion on August 25, 2017. *See* D.E. 60. As such, the Court is not persuaded that Plaintiffs unreasonably delayed in adding these parties and factual allegations.

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs' motion to leave to file an Amended Complaint is denied in part and granted in part. An appropriate order will accompany this opinion.

<u>s/ Michael A. Hammer</u>
**UNITED STATES MAGISTRATE JUDGE**

Dated: January 11, 2018