NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEAN ABELARD, et al., | Civil Action No. 16-5276 (KM) (MAH) |
| Plaintiffs, | |
| v. | OPINION |
| CLEAN EARTH, INC., et al., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs Jean and Guerda Abelard as Administrators ad Prosequendum for the Estate of Marvin Abelard's Motion for Leave to File a Fifth Amended Complaint. The Court issues this decision without oral argument. Fed. R. Civ. P. 78. For the reasons set forth below, the Court will grant in part and deny in part Plaintiffs' motion.

## II. BACKGROUND

### a. Factual Allegations in the Fifth Amended Complaint[1]

This matter arises out of a workplace accident that resulted in the death of Marvin Abelard at Defendant Clean Earth, Inc.'s New Jersey facility. Proposed Fifth Amended Complaint, ¶¶ 3, 10, D.E. 136-5. Reavan, Inc., who does business as a temporary staffing agency under the name Intelligent Resource Group ("IRG"), employed Mr. Abelard and placed him at Clean Earth. *Id.* ¶

---

[1] For purposes of this motion, the Court accepts as true the factual allegations in the proposed pleading. *See Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 195 (3d Cir. 2016); *Abelard v. Clean Earth Inc.*, No. 16-5276, 2017 WL 600082, at *1 n.1 (D.N.J. Feb. 14, 2017).

10. Clean Earth is "one of the largest processors of contaminated soils, dredged sediments, drill cuttings, industrial non-hazardous wastes, aerosol cans, consumer commodities and hazardous wastes." *Id.* ¶ 3.

Mr. Abelard's duties at Clean Earth included cleaning dirt and debris off of the conveyor belt and rollers of a Sandvik QE440, Scalping Screener. *See id.* ¶¶ 10, 13, 30. The Sandvik QE440 Operator's Manual sets forth detailed instructions about how to safely operate the machine, which include not working alone or too closely to its component parts while it is in use. *See id.* ¶ 30. In addition, Clean Earth's safety officer instructed Mr. Abelard "to keep a distance of several hundred feet away from the Sandvik QE 440 machine." *Id.* ¶ 29. Mr. Abelard "was also advised to stay away from the Sandvik QE440 when it was in use." *Id.*

Plaintiffs allege that,

> [d]espite these warnings, [Mr. Abelard] was directed by Clean Earth to work with the Sandvik QE440 alone. Specifically, in direct contravention of these warnings, [Mr. Abelard] was told to use a metal scraper on a wooden handle to knock debris off a component of the QE440 while it was in use and operating. Additionally, [Mr. Abelard] was responsible for cleaning the rollers of the conveyor belt. [Mr. Abelard] was not properly trained prior to being assigned to work on the machine.

*Id.* ¶ 30. Plaintiffs further allege that, "in an egregious disregard for the safety of the workers at its facility in Carteret, New Jersey, [Clean Earth] deliberately, knowingly, and recklessly, removed a conveyor safety guard from the subject Sandvik QE440, thereby causing [Mr. Abelard] to be sucked into the Sandvik QE440 and asphyxiated." *Id.* ¶ 31. According to Plaintiffs, "Clean Earth knew with substantial certainty that [Mr. Abelard] would be injured if he continued to work under these conditions." *Id.* ¶ 32. "Nonetheless," Plaintiffs continue, "Clean Earth required [Mr. Abelard] to continue to work in this dangerous environment." *Id.*

**b. Procedural History**

On July 25, 2016, Plaintiffs filed a five-count complaint in the Superior Court of New Jersey, Law Division again Clean Earth, Sandvik, Inc., and ten fictitious entities. *See* Notice of Removal, Ex. A, D.E. 1-1. Plaintiffs alleged that (1) Sandvik and the fictitious entities can be held strictly liable for Mr. Abelard's death under the New Jersey Products Liability Act, N.J. Stat. Ann. §§ 2A:58c-1 to -11 (Count One); (2) Clean Earth and the fictitious entities "were negligent in their maintenance/repair of the machine," (Count Two); (3) Clean Earth and the fictitious entities "were negligent in their training of Mr. Abelard," (Count Three); (4) Plaintiffs are entitled to all available relief under the New Jersey Wrongful Death Act, N.J. Stat. Ann. §§ 2A:31-1 to -6 (Count Four); and (5) Plaintiffs are entitled to all available relief under the New Jersey Survivor's Act, N.J. Stat. Ann. § 2A:15-3, (Count Five). *See id.*

Sandvik timely removed the action to federal court. Notice of Removal, D.E. 1. Clean Earth thereafter moved to dismiss the complaint. *See* Motion to Dismiss, D.E. 10. Clean Earth argued that the exclusive remedy provision of the New Jersey Workers' Compensation Act ("WCA"), N.J. Stat. Ann. § 34:15-8,[2] barred the present action because "Plaintiffs timely collected all of the benefits available to [Mr. Abelard] under IRG's workers' compensation insurance." *See* Memorandum of Law in Support of Motion to Dismiss, at 1, D.E. 10-1. Specifically, Clean Earth argued:

> Plaintiffs allege only that negligent conduct on the part of Clean Earth resulted in Decedent's fatal accident. . . . Clean Earth was [Mr. Abelard's] special employer, and because his estate has already collected workers' compensation benefits, all of the claims against

---

[2] "If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong." N.J. Stat. Ann. § 34:15-8.

> Clean Earth are barred by the [WCA]. Accordingly, Counts Two,
> Three, Four and Five of the Complaint should be dismissed.

*Id.* at 3.

In response to Clean Earth's motion, Plaintiffs cross-moved to amend the complaint to include a claim of intentional wrongdoing[3] as Count Six. *See* Certification of David. M. Estes, Esq. in Opposition to Clean Earth's Motion to Dismiss, and in support of Plaintiffs' Cross-Motion to Amend, Ex. 8, D.E. 18-3. Plaintiffs' submissions included a Certification from Reynauld Bien-Aime that set forth his observations regarding Mr. Abelard's employment relationship with IRG and Clean Earth and Mr. Aberlard's job duties. *See* Certification of Reynauld Bien-Aime in Opposition to Clean Earth's Motion to Dismiss, D.E. 18-4.

This Court granted Plaintiffs' cross-motion, holding that Plaintiffs pled sufficient facts alleging that Clean Earth committed an "intentional wrong" within the meaning of the WCA. *Abelard*, 2017 WL 600082, at *4. In the First Amended Complaint, Plaintiffs alleged that, "[i]n the event that the Court determines that plaintiff was an employee of Clean Earth, [P]laintiffs' claims against Clean Earth should not be precluded under the [WCA]." First Amended Complaint, ¶ 20, D.E. 25. In support of that allegation, Plaintiffs asserted for the first time that (1) Mr. Abelard "was told to use a metal scraper on a wooden handle to knock debris off a component of the QE440 while it was in use and operating," *id.* ¶ 23; (2) "Clean Earth knew with substantial certainty that [Mr. Abelard] would be injured if he continued to work under these conditions," *id.* ¶ 24; and (3) "[Mr. Abelard's] injuries and the circumstances surrounding the infliction of those injuries are not the type of hazard of employment which the New Jersey legislature anticipated to be compensable

---

[3] *See Laidlow v. Hariton Mach. Co., Inc.*, 790 A.2d 884, 887 (N.J. 2002) ("[A]n employer who causes the death or injury of an employee by committing an 'intentional wrong' will not be insulated from common-law suit.").

under the [WCA]," *id.* ¶ 25. Plaintiffs thus demanded "judgment against defendants for compensatory damages, punitive damages, interest, attorney's fees, and such further relief as the Court deems equitable and just." *Id.*

The Court thereafter permitted Plaintiffs to file a Second Amended Complaint substituting SMC USA for Sandvik and adding Sandvik UK as a party. *See* Scheduling Order, D.E. 29. On August 25, 2017, Plaintiffs sought leave to file a Third Amended Complaint to include additional factual allegations in support of Count Six, and to join IRG and two distributors of the Sandvik QE440 as defendants. *See Abelard v. Clean Earth, Inc.*, No. 16-5276, 2018 WL 3894880, at \*1 (D.N.J. Jan. 11, 2018). This Court granted in part and denied in part the motion. The Court permitted Plaintiffs to amend the complaint only to name the distributors and to add new factual allegations in Count Six. *See id.* at \*3-\*6. Plaintiff amended Count Six to include the allegation that "Clean Earth[] deliberately, knowingly, and recklessly, removed a conveyor safety guard from the subject Sandvik QE440, thereby causing the plaintiff to be sucked into the Sandvik QE440 and asphyxiated." Third Amended Complaint, ¶ 30, D.E. 72.

Pursuant to a Consent Order dated June 4, 2018, Plaintiff was granted leave to file a Fourth Amended Complaint to name an additional Sandvik-related entity as a defendant. Consent Order, D.E. 86. Motion practice and discovery thereafter continued. On March 6, 2019, this Court stayed all discovery with the exception of jurisdictional discovery related to certain Sandvik entities pending a June 4, 2019, mediation. Order, D.E. 122. Following the mediation, Plaintiffs settled their claims with all defendants with the exception of Clean Earth. *See* Pls.' Br. in Support of Motion to file a Fifth Amended Complaint at 1, D.E. 136-1; Order of Dismissal, D.E. 141.

During the pendency of the stay, Plaintiffs "hired a private detective to locate and secure testimony from two individuals who were former employees of Clean Earth, Reynauld Bien-Aime

and Adam Cartier." Pls.' Br. at 2. Plaintiffs "had originally planned on subpoenaing these individuals for deposition testimony, but the discovery stay . . . necessitated the procurement of these statements via private detective." *Id.* Plaintiffs also retained an OSHA expert to analyze the two witness statements and draft an expert report.[4] *Id.*

During a telephone status conference with the parties on June 6, 2019, Plaintiffs advised the Court that they intended to file a Fifth Amended Complaint. The Court directed that if Plaintiffs and Clean Earth could agree on the proposed amendments, they were to submit "(1) a proposed Consent Order to amend the Complaint, and (2) a jointly proposed Amended Scheduling Order for the completion of fact discovery, service of any expert reports or supplements to expert reports, and completion of expert discovery." Order, D.E. 129. In accordance with the parties' submission, the Court entered an Amended Scheduling Order prescribing that all fact discovery, including depositions, shall be completed by December 6, 2019; and that all expert discovery shall be completed by May 31, 2020. Amended Scheduling Order, D.E. 134. The parties were unable to reach an agreement with respect to the proposed amendment. Accordingly, Plaintiffs now move for leave to file a Fifth Amended Complaint.

Plaintiffs seek to amend the complaint in two respects. First, Plaintiffs seek to include "[a]dditional intentional, deliberate, and reckless acts and/or omissions by Clean Earth, Inc. that show with substantial certainty that Marven Abelard would be seriously injured or killed at the worksite . . . ." Proposed Fifth Amended Compl. ¶ 32, D.E. 136-5. Specifically, Plaintiffs intend to allege that Clean Earth:

- deliberately, knowingly, and recklessly, remov[ed] the conveyor safety guards from all Sandvik QE440 machines when the machines arrived at the Clean Earth work site;

---

[4] The initial Scheduling Order was filed on March 7, 2017 and imposed a March 6, 2018 deadline to complete fact discovery. Pretrial Scheduling Order, D.E. 29.

- deliberately, knowingly, and recklessly, remov[ed] the conveyor safety guards from Sandvik QE440 machines in order to hasten productivity of the machines by making them easier to clean as well as avoiding machine shutdowns as a result of clogs and debris build up on the conveyors of the machine;

- fail[ed] to provide formal training to temp workers, including Marven Abelard, with regard to the use and operation of the Sandvik QE440 at the Clean Earth work site;

- knowingly and deliberately assign[ed] untrained temp workers, including Marven Abelard, to clean dirt and debris from the Sandvik QE440 while the Sandvik QE440 was unguarded and operating;

- knowingly and deliberately assign[ed] untrained temp workers, including Marven Abelard, to use a wooden scraping tool to clean the Sandvik QE440 machine by inserting the tool into the machine while the machine was unguarded and operating;

- knowingly and deliberately fail[ed] to enforce safety rules regarding the Sandvik QE440 machine for its untrained temp workers, including Marven Abelard;

- only enforce[ed] safety rules regarding the Sandvik QE440 machine when Clean Earth safety officers or high-profile supervisors were present; [and]

- knowingly and deliberately conceal[ed] the removal of the safety guards on the Sandvik QE440 from its untrained temp workers, including Marven Abelard, thereby exposing the untrained temp workers to the risk of serious injury or death without the temp workers having any knowledge of such danger.

*Id.* Plaintiffs also seek to include a stand-alone punitive damages claim as Count Seven. In that count, Plaintiffs restate the aforementioned list of specific acts and omissions. *Compare id.* ¶¶ 31, 32 *with id.* ¶ 35. Plaintiffs then allege that it was clearly foreseeable that temporary workers such as Mr. Abelard "were likely to suffer serious injury and harm from [Clean Earth's] conduct." *Id.* ¶ 36. Plaintiffs also aver that the site supervisor was aware of the aforementioned conduct and that

Clean Earth deliberately concealed its actions by selectively enforcing its safety rules. *Id.* ¶¶ 37-38.

## III. ANALYSIS

"Federal Rule of Civil Procedure 15(a)(2) provides a liberal standard for motions to amend: 'The Court should freely give leave when justice so requires.'" *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019) (quoting Fed. R. Civ. P. 15(a)(2)). Notwithstanding that liberal standard, "[d]enial of leave to amend can be based on undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States ex rel. Schumann v. AstraZeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014)). The Court may also consider "additional equities, such as judicial economy/burden on the court and the prejudice denying leave to amend would cause to the plaintiff." *Id.* at 150. "All factors are not created equal, however, as 'prejudice to the non-moving party is the touchstone for the denial of an amendment.'" *Id.* (quoting *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006)).

The Court will deny leave to amend the complaint to plead a stand-alone punitive damages count on the basis of futility. There is no independent cause of action for punitive damages under New Jersey law; rather, punitive damages are a *remedy* to be awarded by the trier of fact upon a plaintiff's satisfaction of a heightened burden of proof. *See* N.J. Stat. Ann. § 2A:15-5.12. The Court will nonetheless permit Plaintiffs to amend Count Six to include the specific allegations of wrongdoing. Clean Earth suffers no appreciable prejudice in having to defend against the proposed allegations. Nor is the delay in seeking the present amendments "undue."

### a. Proposed Count Seven

Futility is assessed by determining whether the proposed amendment can "withstand a renewed motion to dismiss.'" *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). In this analysis, the Court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *City of Cambridge Retirement Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018) (quoting *In re Burlington Coat Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). The issue is whether the amended pleading sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

It is well-settled New Jersey law that "[p]unitive damages are a remedy incidental to [a] cause of action, not a substantive cause of action in and of themselves." *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000) (alterations in original); *see also* N.J. Stat. Ann. § 2A:15-5.13(c) (prescribing that punitive damages may be awarded under New Jersey law only if compensatory damages have been awarded); *Powell v. Verizon*, No. 19-8418, 2019 WL 4597575, at *14 (D.N.J. Sept. 20, 2019) (granting motion to dismiss count seeking punitive damages because "[p]unitive damages . . . are a remedy—not a cause of action"); *O'Connor v. Harms*, 266 A.2d 605, 609 (N.J. Sup. Ct. App. Div. 1970 (stating that "the great weight of authority is to the effect that punitive or exemplary damages will not be awarded unless there is an independent cause of action for compensatory damages, and that, more frequently than not, an actual verdict or award of compensatory damages is held a prerequisite for the allowance of punitive damages" (quoting *Barber v. Hohl*, 123 A.2d 785, 789 (N.J. Sup. Ct. App. Div. 1956)).

"Absent a viable underlying cause of action, a claim for punitive damages alone will not stand." *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-335 2013 WL 6048720, at *8 (D.N.J. Nov. 14, 2013); *accord Smith v. Whitaker*, 723 A.2d 243, 250 (N.J. 1999) ("As a

rule, a claim for punitive damages may lie only where there is a valid underlying cause of action."). Accordingly, granting Plaintiffs leave to amend the Complaint to plead punitive damages as a separate count would be futile.[5]

### a. Proposed Factual Allegations in Count Six

Clean Earth's principal opposition to the motion is undue delay and prejudice. "The 'undue delay' factor recognizes that a gap between when amendment becomes possible and when it is actually sought can, in certain circumstances, be grounds to deny leave to amend." *Mullin*, 875 F.3d at 151. "'Undue delay is 'protracted and unjustified'—it 'can place a burden on the court or counterparty' or show 'a lack of diligence sufficient to justify a discretionary denial of leave.'" *Spartan Concrete Prods., LLC*, 929 F.3d at 115 (quoting *Mullin*, 875 F.3d at 151). Denial of leave to amend is appropriate "when the movant delays completion of discovery" or "when adding a new claim would 'fundamentally alter[] the proceeding and could have been asserted earlier.'" *Id.* at 115-16 (alteration in original) (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 274 (3d Cir. 2001)). The inquiry "focus[es] on the movant's reasons for not amending sooner." *Cureton*, 252 F.3d at 274; *see also Mullin*, 875 F.3d at 151 (noting that the Third Circuit "has refused to overturn denials of motions for leave to amend where the moving party offered no cogent reason for the delay in seeking the amendment").

---

[5] Nothing in this opinion forecloses Plaintiffs from seeking punitive damages in conjunction with their intentional wrongdoing claim in Count Six, wherein Plaintiffs have expressly included a claim for punitive damages in the prayer for relief. *See* N.J. Stat. Ann. § 2A:15-5.11 (prescribing that "[a]n award of punitive damages must be specifically prayed for in the complaint"). If Plaintiffs can establish liability at a later juncture, Plaintiffs can present evidence and expert testimony before the trier of fact as to the nature and quantum of damages to which they are entitled. *See Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 13-7738, 2014 WL 1577694, at *5 (D.N.J. Apr. 21, 2014) (dismissing stand-alone punitive damages count but "not[ing] that Plaintiff has preserved its right to argue for punitive damages as a remedy if allowed under the remaining causes of action"). The Court has passed no judgment on Plaintiffs' ability to do so.

"Prejudice involves the serious impairment of the defendant's ability to present its case." *Formosa Plastics Corp., U.S.A.* v. ACE Am. Ins. Co., 259 F.R.D. 95, 99 (D.N.J. 2009) (citing *Dole v. Arco Chem. Co.*, 921 F.3d 484, 488 (3d Cir. 1990)).  Many considerations in the undue delay analysis overlap with the inquiry into whether the non-movant will suffer prejudice:  courts consider whether permitting the amendment "would (1) require defendants to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay resolution of the dispute; or (3) prevent a party from bringing a timely action in another jurisdiction." *Id.* (citing *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004)); *see also Cureton*, 252 F.3d at 273 (noting that the Third Circuit has "considered whether allowing an amendment would result in additional discovery, cost, and preparation to defendant against new facts or new theories").

Plaintiffs contend that they did not have sufficient evidence to include the additional allegations in Count Six until they obtained the recorded statements of Reynauld Bien-Aime and Adam Cartier in May 2019.  Pls.' Br. at 5; Reply Br. at 1.  Plaintiffs acknowledge their pre-existing awareness of the missing conveyor guard and Clean Earth's instructions to Mr. Abelard regarding the use of the wooden stick to clear debris.  Reply Br. at 2.  However, they submit that they were unaware of the putative fact that Clean Earth intentionally removed the safety guards upon the machines' arrival at the facility until the occurrence of those interviews.  *Id.* at 3  Plaintiffs also assert that Clean Earth suffers no prejudice by its proposed amendments.  They note that fact discovery remains open until December 2019 and that only the representative of Mr. Abelard's estate had been deposed to date.  Pls.'s Br. at 7.  In Plaintiffs' view, "Clean Earth will not have to expend additional resources to defend the matter because the witnesses are the same witnesses that would be deposed regardless of whether a punitive claim exists or not." *Id.*

On the other hand, Clean Earth asserts that Plaintiffs have not proffered any additional or new information to support the present amendments. Def. Br. at 8. Clean Earth disagrees with Plaintiffs' justification for seeking leave at this time, stressing that Plaintiffs are merely reiterating allegations that it already knew. *Id.* at 9-10. According to Clean Earth, it will suffer prejudice if leave to amend is granted because written discovery is complete and the proposed amendment will "require more expense, more discovery, and a fundamental shift in the way that Clean Earth will defend this claim." Def. Br. at 11. Clean Earth also stresses the litigation costs that it has expended in defending this action to date as a result of Plaintiffs' litigation conduct. *Id.* at 11-12.

The Court finds that Plaintiffs have satisfactorily explained their delay in seeking to add the aforementioned factual allegations to Count Six. At the time Plaintiffs filed this motion, they had not deposed any Clean Earth representative or witness. Plaintiffs thus had no opportunity to probe Clean Earth's putative motives for removing the conveyor guard—if it did in fact do so. Accordingly, Plaintiffs' motion does not suffer from undue delay but is rather a reasonable exercise of diligence in the course of discovery. *See Adams v. Gould Inc.*, 739 F.3d 858, 869 (3d Cir. 1984) ("Since amendment of a complaint is not unusual at the summary judgment stage of a case, we would not characterize plaintiffs' failure to amend their complaint earlier as 'undue delay.'" (internal citation omitted)).

Moreover, it is unclear how the proposed amendments will delay the completion of discovery or change the course of the proceedings. *See Spartan Concrete Prods., LLC*, 929 F.3d at 115-16. Even prior to the subject amendments, the critical issues regarding Plaintiffs' intentional wrongdoing claim were whether Clean Earth intentionally contravened the warnings set forth in the Sandvik QE440 Operator's Manual; whether Clean Earth intentionally removed the conveyor safety guard from the Sandvik QE440; and whether, based on the totality of the

circumstances, Clean Earth knew with substantial certainty that Mr. Abelard was at risk of serious injury under the working conditions at the time of his death.[6] The additional allegations in Count Six—which pertain to Clean Earth's motive in allegedly removing the conveyor safety guard, its training and use of temporary workers, and its enforcement of safety rules—do not materially change those issues. The parties would have certainly explored the issues of motive and intent during the remainder of fact discovery and during expert discovery given that those issues inherently impact the availability of punitive damages under Count Six.

Finally, the Court disagrees with Clean Earth's contentions regarding prejudice. Clean Earth provides no elaboration on how the amendments would result in "a fundamental shift in the way that [it] would defend this claim." Def.'s Br. at 11. Clean Earth has been on notice of the demand for punitive damages and the factual predicate for the claim since the First Amended Complaint.

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Leave to File a Fifth Amended Complaint is granted in part and denied in part.

*s/ Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**

Dated: October 9, 2019

---

[6] To that point, although the Court will allow the amendments to Count Six, it strains to grasp the necessity of this motion. A party need not plead each and every fact that it intends to introduce at trial in order to preserve its ability to do so. To the contrary, Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See In re Tower Air, Inc.*, 416 F.3d 229, 237 (3d Cir. 2005) ("'[A] plaintiff need only make out a claim upon which relief can be granted. If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of civil discovery mechanisms under the Federal Rules' . . . . [A] plaintiff will not be thrown out of court on a Rule 12(b)(6) motion for lack of detailed facts." (quoting *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004)); 5 C. Wright & Miller, *Federal Practice and Procedure* § 1218 (3d ed. 2019) ("[W]hether the specificity standard of Rule 8(a)(2) has been satisfied is to be determined by whether the pleading gives fair notice to the opposing party, and not whether it contains 'ultimate facts' as opposed to 'evidence,' or 'conclusions.'").